1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                     NORTHERN DISTRICT OF CALIFORNIA

10                            SAN JOSE DIVISION

11

12  ST. PAUL FIRE & MARINE INSURANCE          Case No. 15-CV-02744-LHK
    COMPANY,
13                                            **ORDER ON MOTIONS TO DISMISS**
                Plaintiff,
14                                            Re: Dkt. Nos. 41, 44
        v.
15
    INSURANCE COMPANY OF THE STATE
16  OF PENNSYLVANIA,

17              Defendant.

18

19          Before the Court are two motions to dismiss defendant and counter-plaintiff The Insurance

20  Company of the State of Pennsylvania's ("ICSOP") counterclaims: one motion to dismiss filed by

21  counter-defendant Zurich American Insurance Company ("Zurich") and one motion to dismiss

22  filed by plaintiffs and counter-defendants St. Paul Fire and Marine Insurance Company ("St.

23  Paul") and Travelers Property Casualty Company of America ("Travelers") (collectively, "St.

24  Paul/Travelers").

25          Having considered the submissions of the parties, the record in this case, and the relevant

26  law, the Court hereby DENIES Zurich's motion to dismiss and GRANTS St. Paul/Travelers'

27  motion to dismiss, for the reasons stated below.

28
    Case No. 15-CV-02744-LHK
    ORDER ON MOTIONS TO DISMISS

United States District Court
Northern District of California

## I.  BACKGROUND

### A.  Factual Background

The parties do not dispute the relevant factual background for the instant motions to dismiss.  The instant lawsuit is an insurance coverage dispute arising from the settlement of an underlying construction defect lawsuit.

The underlying construction defect lawsuit relates to the allegedly defective construction of 17 apartment buildings at the University of California at Santa Cruz (the "Project").  ICSOP Counterclaims, ECF No. 22, ¶ 12.  The Regents of the University of California (the "Regents") hired Devcon Construction, Inc. ("Devcon") as the contractor for the Project.  *Id.* ¶¶ 13.  Devcon hired subcontractor The Brady Companies ("Brady") to perform certain work on the Project.  *Id.* ¶ 14-15.

Over the course of the relevant time period, three different insurance companies provided primary insurance coverage to Brady.  St. Paul insured Brady under a commercial general liability policy from June 1, 2004 to June 1, 2005.  *Id.* ¶ 20.  The St. Paul policy had a coverage limit of $1,000,000 per event with a total policy limit of $2,000,000.  *Id.*  The St. Paul policy required Brady to pay a $75,000 deductible per event.  FAC, ECF No. 38, Exh. A, at 21.  Travelers insured Brady under a commercial general liability policy from June 1, 2005 to June 1, 2006.  ICSOP Counterclaims ¶ 22.  The Travelers policy had a coverage limit of $1,000,000 per event with a total policy limit of $2,000,000.  *Id.*  The Travelers policy required Brady to pay a $75,000 deductible per event.  FAC, Exh. B at 31.  Zurich insured Brady under a series of successive commercial general liability policies from June 1, 2006 to June 1, 2014.  ICSOP Counterclaims ¶ 27.  From June 1, 2006 to June 1, 2012, the Zurich policies had a coverage limit of $1,000,000 per event with a total policy limit of $2,000,000.  *Id.*  From June 1, 2012 to June 1, 2014, the Zurich policies had a coverage limit of $2,000,000 per event with a total policy limit of $4,000,000.  *Id.*

In addition, two different insurance companies provided excess insurance coverage to Brady.  Everest National Insurance Company ("Everest") provided excess commercial general

United States District Court
Northern District of California

liability insurance to Brady from June 1, 2006 to June 1, 2009.  FAC ¶ 16.  The Everest policy is not at issue in the instant motions to dismiss.  ICSOP provided excess commercial general liability insurance to Brady from June 1, 2004 to June 1, 2006.  *Id.* ¶ 17.  The ICSOP policy has a liability limit of $10,000,000 per event and in total.  ICSOP Counterclaims ¶ 32.  ICSOP alleges that the ICSOP policy "pays 'ultimate net loss' in excess of underlying limits of insurance.  The ICSOP Policy defines 'ultimate net loss' as 'the amount payable in settlement of the liability of the Insured after making deductions for all recoveries for other valid and collectible insurances . . . .'" *Id.* ¶ 33.  Because ICSOP is an excess insurer for Brady, the ICSOP policy does not provide coverage until the applicable coverage limits of Brady's relevant primary insurance policies have been exhausted.  *Id.* ¶ 34.

On June 27, 2012, the Regents filed suit against Devcon, alleging various defects in construction of the Project.  *Id.* ¶ 11.  On May 20, 2013, Devcon filed a First Amended Cross-Complaint against Brady and other subcontractors who worked on the Project.  *Id.* ¶ 17.

On January 24, 2014, the University made a confidential settlement demand to Devcon.  *Id.* ¶ 36.  On March 28, 2014, Devcon made a confidential settlement demand to Brady that Brady contribute to the settlement of the case against Devcon.  *Id.* ¶ 37.  Brady forwarded Devcon's confidential settlement demand to Brady's insurers.  *Id.* ¶ 38.  On May 11, 2015, a global settlement was reached in the underlying construction defect lawsuit.  *Id.* ¶¶ 18, 42.  Brady's insurers collectively contributed $4,000,000 to the settlement.  *Id.* ¶ 42.  St. Paul/Travelers contributed $1,000,000 collectively to Brady's contribution to the settlement.  *Id.* ¶ 43.  Zurich, ICSOP, and Everest each contributed $1,000,000 to Brady's contribution to the settlement.  *Id.* Brady's insurers made their respective contributions to the global settlement with a reservation of all rights to have the settlement reallocated amongst Brady's insurers.  *Id.*

**B.  Procedural History**

On May 15, 2015, ICSOP made a demand to St. Paul/Travelers and Zurich that St. Paul/Travelers and Zurich contribute an additional $302,178.75 towards Brady's share of the global settlement as "Supplementary Payments."  FAC ¶ 20.  On June 18, 2015, St. Paul/Travelers

1    filed the instant lawsuit against ICSOP, seeking a declaratory judgment that St. Paul/Travelers are

2    not required to make additional contributions to the global settlement for "Supplementary

3    Payments." *See* Complaint, ECF No. 1; *see also* FAC.  ICSOP answered the complaint on August

4    12, 2015.  ECF No. 7.

5             On October 2, 2015, St. Paul/Travelers and ICSOP stipulated to ICSOP's filing of

6    ICSOP's counterclaims, pursuant to Federal Rule of Civil Procedure 15(a)(2).  ECF No. 23.

7    ICSOP filed its counterclaims against St. Paul/Travelers and Zurich the same day.  ECF No. 22.

8    Zurich was not previously a party to this case.

9             ICSOP's counterclaims include six causes of action.  In the first cause of action in its

10   counterclaims, ICSOP seeks a declaration that St. Paul/Travelers and Zurich are obligated to

11   contribute additional sums to Brady's portion of the global settlement because the underlying

12   construction defect litigation was the result of multiple covered events.  *See* FAC.  In the second

13   cause of action in ICSOP's counterclaims, ICSOP additionally seeks a declaration that St.

14   Paul/Travelers and Zurich must make the additional "Supplementary Payments" at issue in the St.

15   Paul/Travelers complaint.  *Id.*  The third and fourth causes of action in ICSOP's counterclaims are

16   equitable subrogation claims seeking reimbursement from St. Paul/Travelers and Zurich for the

17   same payments at issue in the first and second causes of action, respectively.  *Id.*  The fifth and

18   sixth causes of action are claims seeking the same reimbursement from St. Paul/Travelers and

19   Zurich as the third and fourth causes of action under a theory of unjust enrichment.  *Id.*

20            St. Paul/Travelers filed an answer to ICSOP's counterclaims on October 23, 2015.  ECF

21   No. 30.  St. Paul/Travelers filed the FAC on November 4, 2015.  ECF No. 35 (FAC); ECF No. 38

22   (Errata to FAC).  ICSOP filed an answer to the FAC on November 24, 2015.  ECF No. 40.

23            Zurich filed its motion to dismiss claims five and six of ICSOP's counterclaims on

24   December 7, 2015.  ECF No. 41.[1]  ICSOP filed a response on December 21, 2015, ECF No. 53,

25

26   [1] Zurich additionally filed a request for judicial notice.  ECF No. 42.  The request for judicial
     notice asks this Court to take judicial notice of St. Paul/Travelers' original complaint in the instant
27   lawsuit, ECF No. 1, and ICSOP's counterclaims, ECF No. 22, which are the subject of Zurich's
     motion to dismiss.  Both of the documents for which Zurich requests judicial notice are pleadings

28
                                                      4

1    and Zurich filed a reply on December 28, 2015, ECF No. 56.

2        St. Paul/Travelers filed its motion to dismiss ICSOP's counterclaims on December 7, 2015.

3    ECF No. 44.  ICSOP filed a response on December 21, 2015, ECF No. 54, and St. Paul/Travelers

4    filed a reply on December 28, 2015, ECF No. 57.

5    **II. LEGAL STANDARD**

6        **A. Rule 12(b)(6)**

7        A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted

8    when a complaint does not plead "enough facts to state a claim to relief that is plausible on its

9    face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility

10   when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

11   the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

12   "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer

13   possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

14       For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations

15   in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving

16   party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  The

17   Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see*

18   *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's

19   complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion

20   for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995).  Nor must the

21   Court "assume the truth of legal conclusions merely because they are cast in the form of factual

22   allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam).  Mere

23   "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to

24   dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

25

26   _____

27   filed in the instant case.  Because the Court may consider the allegations contained in the
     pleadings when ruling on a motion to dismiss, *see Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th
     Cir. 2007) (per curiam), the Court DENIED Zurich's request for judicial notice as moot.

28   Case No. 15-CV-02744-LHK
     ORDER ON MOTIONS TO DISMISS

United States District Court
Northern District of California

**B. Rule 12(b)(7) and Rule 19**

Rule 12(b)(7) of the Federal Rules of Civil Procedure authorizes the Court to dismiss an action if a plaintiff has failed "to join a party under Rule 19." Federal Rule of Civil Procedure 19(a)(1)(B) provides, *inter alia*, that a person "must be joined as a party" if "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." If that required person cannot be joined, then "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). The Rule 19 inquiry is "fact specific," and the party seeking dismissal has the burden of persuasion. *See Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).

**C. Leave to Amend**

If the Court concludes that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks omitted). Nonetheless, a district court may deny leave to amend a complaint due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

**III. DISCUSSION**

Zurich and St. Paul/Travelers have each filed a motion to dismiss ICSOP's counterclaims. The Court first discusses the arguments raised in Zurich's motion to dismiss and then turns to St. Paul/Traveler's motion to dismiss.

6

Case No. 15-CV-02744-LHK
ORDER ON MOTIONS TO DISMISS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**A. Zurich's Motion to Dismiss**

Zurich moves to dismiss ICSOP's fifth and sixth counterclaims in which ICSOP seeks reimbursement from Zurich and St. Paul/Travelers for unjust enrichment. ECF No. 41. Zurich argues that because ICSOP is an excess insurer, the only claim ICSOP may bring against the primary insurers—Zurich and St. Paul/Travelers—is a claim for equitable subrogation. *Id.* Zurich additionally argues that ICSOP's unjust enrichment counterclaims must fail because primary insurers do not owe a direct duty to an excess insurer. *Id.* Finally, Zurich argues that unjust enrichment is not a viable cause of action in California. *Id.*[2]

As an initial matter, contrary to Zurich's argument, California law permits claims for reimbursement for unjust enrichment in the insurance context. *See Hartford Casualty Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988, 998-1000 (2015) (recognizing the availability of a claim for reimbursement for unjust enrichment in an insurance case). Thus, Zurich's argument that California law does not permit claims based on unjust enrichment is untenable.

Additionally, Zurich's argument that primary insurers do not owe a direct duty to an excess insurer does not affect the viability of ICSOP's unjust enrichment counterclaims. Under California law, "[a]n individual who has been unjustly enriched at the expense of another may be required to make restitution. Where the doctrine applies, the law implies a restitutionary obligation, even if no contract between the parties itself expresses or implies such a duty." *Id.* at 998. Therefore, California law does not require an independent direct duty owed by a primary insurer to an excess insurer for unjust enrichment to apply.

However, neither party has cited nor has the Court found any California or federal court decision directly addressing whether California law permits an *excess* insurer to bring against a primary insurer a claim for reimbursement for unjust enrichment.

Zurich argues that, under California law, the only claim that may be brought by an excess insurer against a primary insurer is a claim for equitable subrogation. In support of its position,

---

[2] Zurich additionally argued in their motion to dismiss that ICSOP improperly joined Zurich as a counter-defendant to ICSOP's counterclaims. *See* ECF No. 41 at 8. However, in Zurich's reply, Zurich withdrew this argument. *See* ECF No. 56 at 6.

Case No. 15-CV-02744-LHK
ORDER ON MOTIONS TO DISMISS

1   Zurich relies upon two cases from California state courts—*Commercial Union Assurance Cos. v.*

2   *Safeway Stores, Inc.*, 26 Cal. 3d 912 (1980), and *Fireman's Fund Ins. Co. v. Maryland Casualty*

3   *Co. ("Fireman's Fund I")*, 21 Cal. App. 4th 1586 (1994)—and one case from the Northern

4   District of California interpreting the California case law—*Fireman's Fund Ins. Co. v. Commerce*

5   *& Industry Ins. Co. ("Fireman's Fund II")*, No. C-98-1060VRW, 2000 WL 1721080 (N.D. Cal.

6   Nov. 7, 2000). Zurich contends that extrapolating the principles of these three cases leads to the

7   conclusion that as an excess insurer, ICSOP's sole recourse against Zurich is a claim for equitable

8   subrogation. Thus, Zurich argues that ICSOP may not maintain its claim for reimbursement for

9   unjust enrichment.

10          ICSOP argues in response that the cases relied upon by Zurich do not limit the ability of an

11   excess insurer to bring a quasi-contract claim based upon unjust enrichment against Brady's

12   primary insurers because the cases relied upon by Zurich do not discuss unjust enrichment.

13   ICSOP asserts that the cases relied upon by Zurich instead stand only for the proposition that the

14   sole *contract law* claim that may be brought by an excess insurer against a primary insurer is a

15   claim for equitable subrogation. In support of its position, ICSOP cites to two federal court

16   decisions from the Eastern District of California finding that California law permits an excess

17   insurer to bring claims other than equitable subrogation against a primary insurer—*Continental*

18   *Casualty Co. v. St. Paul Surplus Lines Ins. Co.*, No. 2:07-CV-01744-TLN-EF, 2014 WL 4661087

19   (E.D. Cal. Sept. 17, 2014); and *Lexington Ins. Co. v. Sentry Select Ins. Co.*, No. CV F 08-1539LJO

20   GSA, 2009 WL 1586938 (E.D. Cal. June 5, 2009).

21          None of the cases relied upon by either Zurich or ICSOP are directly on point.

22   Nevertheless, the Court finds the analysis in the state and federal cases instructive to the analysis

23   of the instant case. The Court therefore provides a description of each of the cases relied upon by

24   Zurich and ICSOP.

25          **1.   The California Cases: *Commercial Union* and *Fireman's Fund I***

26          Both of the California cases—*Commercial Union* and *Fireman's Fund I*—deal with claims

27   for breach of the duty of good faith and fair dealing. *See Commercial Union*, 26 Cal. 3d at 916-21

28

Case No. 15-CV-02744-LHK
ORDER ON MOTIONS TO DISMISS

*United States District Court*
*Northern District of California*

(analyzing whether an excess insurer could bring a claim for breach of the duty of good faith and fair dealing against a primary insurer); *Fireman's Fund I*, 21 Cal. App. 4th at 1599-1603 (same). The implied covenant of good faith and fair dealing arises between the parties to any contract. *See Commercial Union*, 26 Cal. 3d at 917 (stating that the implied covenant of good faith and fair dealing "is part of any contract").

Because an excess insurer's liability arises only after the primary insurer has satisfied its duty to the insured, equitable subrogation permits an excess insurer to stand in the place of the insured and bring any claims against the primary insurer that the insured would be able to bring. *See Commercial Union*, 26 Cal. 3d at 917-18 (explaining that through a claim of equitable subrogation "the excess carrier, who discharged the insured's liability as a result of [the primary insurer's wrongful refusal to settle], stands in the shoes of the insured and should be permitted to assert all claims against the primary carrier which the insured himself could have asserted"). In *Commercial Union* and *Fireman's Fund I*, the California courts held that an excess insurer may bring a claim for breach of the duty of good faith and fair dealing against a primary insurer only through equitable subrogation. *See Commercial Union*, 26 Cal. 3d at 917-18 (stating that in California, an excess insurer may bring a claim for breach of the duty of good faith and fair dealing by wrongfully refusing to settle only on a theory of equitable subrogation); *Fireman's Fund I*, 21 Cal. App. 4th at 1603 ("[T]he only basis for [the excess insurer] to sue [the primary insurer] for breach of the implied covenant [of good faith and fair dealing] is by way of equitable subrogation to the insured's rights."). The California courts based their holdings on the fact that, because an excess insurer and a primary insurer each separately contract with the insured and do not enter a contract directly with each other, no direct duty of good faith and fair dealing arises between the excess and primary insurers. *See Commercial Union*, 26 Cal. 3d at 917-18 (stating that the ability of an excess insurer to bring suit under equitable subrogation for breach of the duty of good faith and fair dealing against a primary insurer "does not rest upon the finding of any separate duty owed to an excess insurance carrier"); *Fireman's Fund I*, 21 Cal. App. 4th at 1601 (stating that in California a primary insurer does not owe an independent duty of good faith and

1   fair dealing to an excess insurer, so "an excess insurer has rights against the primary only by way

2   of equitable subrogation").

3        However, ICSOP's unjust enrichment counterclaims do not depend upon any explicit or

4   implied contractual duties.  *See Hartford Casualty Ins. Co.*, 61 Cal. 4th at 998 ("Where the

5   doctrine [of unjust enrichment] applies, the law implies a restitutionary obligation, even if no

6   contract between the parties itself expresses or implies such a duty.").  Unjust enrichment creates

7   an obligation where none previously existed, *id.*, so an excess insurer need not resort to equitable

8   subrogation to sue based on the duty owed by the primary insurer to the insured.  By contrast,

9   *Commercial Union* and *Fireman's Fund I* hold that equitable subrogation is necessary for an

10   excess insurer to bring a contract-based claim against a primary insurer.  Therefore, *Commercial*

11   *Union* and *Fireman's Fund I* do not directly address whether the Court should dismiss ICSOP's

12   unjust enrichment counterclaims.

13        **2.   The Federal Cases: *Fireman's Fund II*, *Lexington*, and *Continental Casualty***

14        All of the federal cases relied upon by Zurich and ICSOP address the availability of claims

15   for equitable indemnity brought by an excess insurer against a primary insurer.  Although ICSOP

16   does not assert a counterclaim for equitable indemnity, ICSOP's claim for reimbursement for

17   unjust enrichment is similar to a claim for equitable indemnity because equitable indemnity itself

18   is based upon unjust enrichment principles.  Specifically, in California "[t]he basis for the remedy

19   of equitable indemnity is restitution.  One person is unjustly enriched at the expense of another

20   when the other discharges liability that it should be his responsibility to pay."  *Amerigas Propane,*

21   *LP v. Landstar Ranger, Inc.*, 184 Cal. App. 4th 981, 989 (2010) (internal quotation marks

22   omitted).

23        *Fireman's Fund II*, the federal case upon which Zurich relies, specifically addressed the

24   relationship between and the availability of equitable contribution, equitable subrogation, and

25   equitable indemnity in a case brought by an excess insurer against a primary insurer.  2000 WL

26   1721080, at *2-5.  The court in *Fireman's Fund II* first noted that under California law, it is

27   established that "[a] claim under equitable contribution arises when one co-insurer has paid more

28                                            10

than its proportionate share of the loss." *Id.* at *3. In order for two insurers to be considered co-insurers, such that equitable contribution applies, the two insurers must "share the same level of obligation on the same risk as to the same insured." *Id.* Thus, because an excess insurer and a primary insurer do not share the same level of obligation on the same risk, equitable contribution is not available in a suit by an excess insurer against a primary insurer. *Id.* The court in *Fireman's Fund II* then addressed the availability of equitable indemnity in a case brought by an excess insurer against a primary insurer by analogizing equitable indemnity to equitable contribution. *Id.* at *3-5. The court acknowledged that California case law does not resolve whether an excess insurer may bring a case for equitable indemnity against a primary insurer. *Id.* at *4 ("No case law exists, however, that directly addresses whether *excess insurers* have an equitable indemnification claim against primary insurers in California."). In the absence of California case law directly on point, the court concluded that because some California courts appear to refer to equitable contribution and equitable indemnity interchangeably, equitable indemnity should be limited to claims brought by one insurer against another insurer who shares the same level of obligation on the same risk. *Id.* at *4. Thus, the court in *Fireman's Fund II* held that of the three claims it considered—equitable contribution, equitable indemnity, and equitable subrogation—only equitable subrogation could be brought by an excess insurer against a primary insurer. *Id.* at *5. The court did not discuss the availability of other possible claims, such as unjust enrichment.

The two cases relied upon by ICSOP—*Continental Casualty* and *Lexington*—both held that, notwithstanding *Fireman's Fund II*, equitable indemnity is not equivalent to equitable contribution. *Continental Casualty*, 2014 WL 4661087, at *18; *Lexington*, 2009 WL 1586938, at *19. Both cases therefore concluded that unlike a claim for equitable contribution, a claim for equitable indemnity could be brought by an excess insurer against a primary insurer. *Continental Casualty*, 2014 WL 4661087, at *18; *Lexington*, 2009 WL 1586938, at *19. The court in *Continental Casualty* reached this conclusion solely based upon the fact that equitable indemnity is a restitution-based claim resulting from unjust enrichment. 2014 WL 4661087, at *18.

11

1    The court in *Lexington* engaged in a lengthier comparison of equitable indemnity and

2  equitable contribution.  2009 WL 1586938, at *16-19.  Ultimately, the court in *Lexington* held that

3  equitable contribution and equitable indemnity are not equivalent because whereas contribution

4  requires two parties to equally share a burden, equitable indemnity requires only that one insurer

5  pay a liability that another insurer should have discharged.  *Id.*  Because equitable indemnity does

6  not require the two insurers to share the same exposure to the same risk, the court in *Lexington*

7  held that nothing in the California case law prevented an excess insurer from suing a primary

8  insurer for equitable indemnity.  *Id.* at *19.

9        **3.  The Availability of Unjust Enrichment in the Instant Case**

10    The Court finds the reasoning of *Continental Casualty* and *Lexington* persuasive for how

11  to resolve the availability of unjust enrichment in the instant case.  As all three federal courts to

12  address this issue have recognized, the California court rulings in *Commercial Union* and

13  *Fireman's Fund I* are limited to the availability of contract-based causes of action generally, and

14  more specifically, the availability of claims for the alleged breach of the duty of good faith and fair

15  dealing.  *Commercial Union* and *Fireman's Fund I* held merely that such contract-law claims

16  "devolve[] by subrogation to the insured's rights against the primary carrier, rather than by reason

17  of some independent duty."  *Fireman's Fund I*, 21 Cal. App. 4th at 1600.  Thus, equitable

18  subrogation is the only available cause of action for an excess insurer who wishes to bring a claim

19  for breach of a contractual duty against a primary insurer.  *Id.*  This result occurs because there is

20  no privity of contract directly between the excess insurer and the primary insurer.

21    By contrast, claims based upon unjust enrichment do not depend upon a direct contractual

22  duty between the excess insurer and the primary insurer.  Indeed, unjust enrichment arises

23  precisely when the parties do not otherwise owe one another any express duty.  *See Hartford*

24  *Casualty Ins. Co.*, 61 Cal. 4th at 998 ("Where the doctrine [of unjust enrichment] applies, the law

25  implies a restitutionary obligation, even if no contract between the parties itself expresses or

26  implies such a duty.").  Because unjust enrichment does not depend upon privity of contract

27  between the excess and primary insurers, the holdings of *Commercial Union* and *Fireman's Fund*

28

12

1   *I* do not limit the availability of claims based upon unjust enrichment.

2       Furthermore, the Court finds that the further limitation in California that equitable

3   contribution is only available between primary insurers does not apply to claims based on unjust

4   enrichment.  Equitable contribution claims in California may not be brought by an excess insurer

5   against a primary insurer because contribution in California requires that the two parties equally

6   share responsibility for a liability.  *Fireman's Fund II*, 2000 WL 1721080, at *3.  Thus, an excess

7   insurer cannot bring a claim against a primary insurer for equitable contribution because the

8   excess insurer and the primary insurer are responsible for *different* liabilities.  However, this

9   limitation on equitable contribution claims does not apply to a claim for reimbursement based

10  upon unjust enrichment because unjust enrichment does not require that the parties share the same

11  liability, nor that any contribution agreement exist between the two.

12      Based on its exhaustive review of the federal and California case law, the Court concludes

13  that nothing in California insurance law prevents an excess insurer from bringing a claim for

14  reimbursement against a primary insurer under a theory of unjust enrichment.  Accordingly,

15  because California courts generally recognize claims for reimbursement for unjust enrichment in

16  insurance cases, *see Hartford Casualty*, 61 Cal. 4th at 998-1000 (recognizing the availability of a

17  claim for reimbursement for unjust enrichment in an insurance case), the Court concludes that,

18  under California law, such a claim is permissible.

19      Therefore, the Court DENIES Zurich's motion to dismiss ICSOP's unjust enrichment

20  counterclaims.

21  **B.  St. Paul/Travelers' Motion to Dismiss**

22      St. Paul/Traveler move to dismiss ICSOP's counterclaims pursuant to Federal Rules of

23  Civil Procedure 12(b)(7) and 19 for failure to join a necessary party.  St. Paul/Travelers argue that

24  Brady, the insured, should be joined as a necessary party to ICSOP's counterclaims under Rule

25  19(a)(1)(B).  St. Paul/Travelers acknowledge that Brady can be joined as a defendant, so any

26  dismissal under Rule 12(b)(7) should be without prejudice.

27      Under Rule 19(a)(1)(B), a person "must be joined as a party" if "that person claims an

28

Case No. 15-CV-02744-LHK
ORDER ON MOTIONS TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

1   interest relating to the subject of the action and is so situated that disposing of the action in the

2   person's absence may: (i) as a practical matter impair or impede the person's ability to protect the

3   interest; or (ii) leave an existing party subject to substantial risk of incurring double, multiple, or

4   otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B).[3] St.

5   Paul/Travelers argue that Brady must be joined under Rule 19 because Brady's insurance policies

6   with St. Paul/Travelers require Brady to make additional deductible payments if settlement of the

7   underlying construction lawsuit resolved more than one occurrence, as ICSOP's counterclaims

8   assert that it did.

9        ICSOP opposes St. Paul/Travelers' motion on the grounds that Brady does not "claim[] an

10  interest relating to the subject of the action," Brady's ability to protect any interest Brady does

11  have will not be impaired or impeded by the pending litigation, and omitting Brady from the

12  litigation will not "leave an existing party subject to substantial risk of incurring double, multiple,

13  or otherwise inconsistent obligations because of the interest." *See* Fed. R. Civ. P. 19(a)(1)(B).

14       The Court first addresses ICSOP's argument that Brady has disclaimed an interest in the

15  instant litigation such that Brady need not be joined as a necessary party.  Because the Court

16  concludes that Brady does have an interest in the instant litigation, the Court then addresses

17  whether Brady's absence will either impair or impede Brady's ability to protect that interest, or

18  expose St. Paul/Travelers to substantial risk of incurring multiple or inconsistent obligations.

19       **1.  Brady's Interest in the Instant Counterclaims**

20       In order for Brady to be a necessary party under Rule 19(a)(1)(B), Brady must claim an

21  interest in the subject matter of ICSOP's counterclaims.  The Ninth Circuit has held that the

22  interest must be a "legally protected" interest in order to qualify as a necessary party under Rule

23  19.  *See Ward v. Apple Inc.*, 791 F.3d 1041, 1051 (9th Cir. 2015).

24       Pursuant to the terms of Brady's insurance policies with St. Paul/Travelers, Brady is

---

[3] Rule 19(a)(1)(A) additionally states that a person is a necessary party if "in that person's absence, the court cannot afford complete relief among existing parties."  St. Paul/Travelers do not argue that Brady is a necessary party under Rule 19(a)(1)(A).

14

1   required to pay a $75,000 deductible per occurrence for which St. Paul/Travelers make liability

2   payments on Brady's behalf.  FAC, Exh. A at 21; *id.* Exh. B at 31.  Thus, if ICSOP is correct in its

3   assertion that the underlying construction defect lawsuit was the result of multiple occurrences, the

4   portion of the settlement for which Brady is responsible through its deductible will increase.

5   Brady's accordingly has a legally protectable interest in the instant counterclaims.  *See Ins. Co. of*

6   *the State of Pennsylvania v. Gemini Ins. Co ("Gemini")*, No. 313-cv-02931BAS(DHB), 2014 WL

7   7407466, at *9 (S.D. Cal. Dec. 30, 2014) (finding that absent insureds had an interest in and were

8   necessary parties to a claim regarding the number of occurrences involved in an insurance

9   coverage action).

10          ICSOP does not dispute that Brady has a legally protectable interest in the instant

11   counterclaims.  Rather, ICSOP argues that Brady does not "claim[] an interest" in the

12   counterclaims as required by Rule 19 because "Brady has not sought to participate in this action

13   despite its awareness of the number of occurrences dispute between its insurers."  ECF No. 54 at

14   6.

15          The Ninth Circuit has held that "[w]here a party is aware of an action and chooses not to

16   claim an interest, the district court does not err by holding that joinder was 'unnecessary.'"

17   *Altmann v. Republic of Austria*, 317 F.3d 954, 971 (9th Cir. 2002).  In the instant case, however,

18   ICSOP does not argue that Brady is aware of ICSOP's counterclaims.  *See generally* ECF No. 54.

19   Instead, ICSOP bases its argument on the unsupported assertion that Brady is aware of "the

20   number of occurrences dispute between its insurers."  *Id.* at 6.  ICSOP does not assert, let alone

21   point to any evidence in the record, that Brady is aware of ICSOP's counterclaims.

22          By contrast, where there is no evidence that the absent party is aware of an action, the

23   Court may conclude that the absent party is necessary under Rule 19 without the absent party

24   taking affirmative steps to indicate a desire to participate in the lawsuit.  *See, e.g.*, *Gemini*, 2014

25   WL 7407466, at *9 (finding that absent insureds had an interest in and were necessary parties to a

26   claim regarding the number of occurrences involved in an insurance coverage action).

27          Therefore, because there is no indication in the record that Brady is aware of ICSOP's

28
                                                      15

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1    counterclaims but has chosen not to claim an interest in the litigation, Brady's failure to assert an

2    interest in the litigation does not prevent the Court from concluding that Brady is a necessary party

3    under Rule 19. *See Altmann*, 317 F.3d at 971 ("Where a party is aware of an action and chooses

4    not to claim an interest, the district court does not err by holding that joinder was 'unnecessary.'").

5         Thus, Brady has an interest in ICSOP's counterclaims. Accordingly, the Court must

6    determine the impact of Brady's absence in order to determine whether Brady is a necessary party

7    under Rule 19.

8         **2.  Impact of Brady's Absence**

9         Because Brady is a person with an interest relating to the subject of ICSOP's

10   counterclaims, Brady is a necessary party under Rule 19(a)(1)(B) if Brady's absence from the

11   litigation would either "(i) as a practical matter impair or impede [Brady's] ability to protect

12   [Brady's] interest; or (ii) leave an existing party subject to a substantial risk of incurring double,

13   multiple, or otherwise inconsistent obligations because of [Brady's] interest."

14        The Court need not reach the first prong—Brady's ability to protect Brady's interest—

15   because the Court concludes that the second prong—whether Brady's absence would leave an

16   existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent

17   obligations—is dispositive.

18        If Brady is not joined as a party to the instant action, Brady would not be bound by this

19   Court's judgment as to the number of occurrences. *See Taylor v. Sturgell*, 553 U.S. 880, 893

20   (2008). Thus, Brady could bring a subsequent lawsuit against St. Paul/Travelers to separately

21   determine the number of occurrences, which would affect Brady's deductible of $75,000 per

22   occurrence.

23        St. Paul/Travelers argue that they would be subject to a substantial risk of incurring

24   inconsistent obligations if Brady is not joined because ICSOP's counterclaims could result in a

25   judgment that the underlying construction defect lawsuit resulted from multiple occurrences while

26   a subsequent adjudication with regard to Brady could result in a judgment that there was only a

27   single occurrence. St. Paul/Travelers would thus be obligated to pay $2 million towards the

28
                                                       16

1    settlement as a result of ICSOP's counterclaims, and Brady's deductible would be $150,000 or

2    more depending on the number of occurrences.  However, in the adjudication with regard to

3    Brady, St. Paul/Travelers would only have been required to pay $1 million and would only be able

4    to collect $75,000 as a deductible from Brady.

5         The Ninth Circuit has held that "[i]nconsistent obligations occur when a party is unable to

6    comply with one court's order without breaching another court's order concerning the same

7    incident." *Cachil Dehe Band of Wintun Indians of the Colusa Indian Community v. California*,

8    547 F.3d 962, 976 (9th Cir. 2008).  "Inconsistent adjudications or results, by contrast, occur when

9    a defendant successfully defends a claim in one forum, yet loses on another claim arising from the

10   same incident in another forum." *Id.*  Accordingly, in *Cachil*, the Ninth Circuit held that the State

11   of California would not confront inconsistent obligations if California's contract with several

12   tribes were subject to different interpretation for each tribe because California could adhere

13   simultaneously to a different interpretation for each tribe.  *Id.*  Similarly, where the outcome of

14   any subsequent litigation would account for damages paid in the initial lawsuit, under *Cachil* there

15   is no risk of inconsistent obligations.  *See Bird v. Keefe Kaplan Maritime, Inc.*, No. 14-CV-03277-

16   MEJ, 2015 WL 1009015, at *4 (N.D. Cal. March 5, 2015) (holding that a subrogee was not a

17   necessary party in part because any future recovery by the subrogee would take into consideration

18   the recovery in the initial lawsuit).

19        By contrast, in the instant case, St. Paul/Travelers would be subject to the risk of

20   inconsistent judgments with regard to the same obligation—the $1 million in coverage St.

21   Paul/Travelers owes if there were multiple occurrences.  If ICSOP prevails in establishing that

22   there were multiple occurrences, St. Paul/Travelers would be obligated to contribute $2 million

23   total to the settlement and would be entitled to at least $150,000 in deductible payments from

24   Brady.  However, if in a subsequent action Brady establishes that there was only a single

25   occurrence, St. Paul/Travelers would be obligated to contribute only $1 million total to the

26   settlement and would be entitled to only $75,000 in deductible payments.  St. Paul/Travelers

27   would not be able to fully comply with both judgments, and thus St. Paul/Travelers faces a

28

Case No. 15-CV-02744-LHK
ORDER ON MOTIONS TO DISMISS

United States District Court
Northern District of California

1   substantial risk that it would be subject to multiple obligations regarding St. Paul/Travelers'

2   required contribution to the settlement. *See Gemini*, 2014 WL 7407466, at *9 (holding that the

3   absent insureds were necessary parties to an insurance coverage action because the risk of

4   inconsistent judgments regarding the number of occurrences would subject the insurer to

5   inconsistent obligations). Therefore, Brady's absence subjects St. Paul/Travelers to a substantial

6   risk of incurring inconsistent obligations, and Brady is a necessary party under Rule

7   19(a)(1)(B)(ii). The Court GRANTS St. Paul/Travelers' motion to dismiss for failure to join

8   Brady as a necessary party with leave to amend because St. Paul/Travelers does not argue that

9   joining Brady would be infeasible. *See* ECF No. 44 (St. Paul/Travelers' motion to dismiss).

10  **IV. CONCLUSION**

11        For the foregoing reasons, the Court DENIES Zurich's motion to dismiss ICSOP's

12  counterclaims and GRANTS St. Paul/Travelers' motion to dismiss with leave to amend. ICSOP's

13  amended counterclaims must be filed within thirty (30) days of this Order. Failure to timely

14  amend will result in dismissal of ICSOP's counterclaims with prejudice.

15  **IT IS SO ORDERED.**

16

17  Dated: March 28, 2016

18                                              *Lucy H. Koh*
                                                _____
19                                              LUCY H. KOH
                                                United States District Judge
20

21

22

23

24

25

26

27

28
    Case No. 15-CV-02744-LHK
    ORDER ON MOTIONS TO DISMISS

United States District Court
Northern District of California

18